# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| EVELYN VILLEGAS ROBLES,<br>as Personal Representative of the Estate of<br>LUIS ORLANDO RODRIGUEZ,<br>Plaintiff,<br><br>v.<br><br>SELECTIVE INSURANCE COMPANY OF<br>AMERICA, SLECTIVE INSURANCE<br>COMPANY OF SOUTH CAROLINA, and<br>SELECTIVE INSRUANCE COMPANY OF<br>THE SOUTHEAST,<br>and PHARMSCRIPT LLC,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **CIVIL ACTION**<br>**NO. 24-40122-MRG** |

## <u>REPORT AND RECOMMENDATION</u>

### September 2, 2025

Hennessy, M.J.

By Order of Reference dated May 5, 2024, pursuant to 28 U.S.C. § 636(b)(1)(B) (Docket #29), this matter was referred to me for a report and recommendation on Defendants Selective Insurance Company of America ("SICA"), Selective Insurance Company of South Carolina ("SICSC"), and Selective Insurance Company of the Southeast's ("SICSE") (collectively, the "Selective Defendants") motion for judgment on the pleadings (Docket #22). Plaintiff Evelyn Villegas Robles has filed an opposition (Docket #25) to which the Selective Defendants have replied (Docket #28). This matter is now ripe for adjudication. For the reasons that follow, I RECOMMEND that the motion for judgment on the pleadings (Docket #22) be ALLOWED IN PART and DENIED IN PART.

I.       BACKGROUND

On May 7, 2018, Luis Orlando Rodriguez was working on a construction site known at 191 Paris Street in East Boston, Massachusetts (the "project") as an apprentice union carpenter for Northeast Framing, Inc. ("NFI"). (Am. Compl. at ¶¶ 5, 7).[1]  NFI had been retained by Turnkey Lumber Inc. ("Turnkey") to install prefabricated wooden wall panels on the project under Turnkey's subcontract with Delphi Construction, Inc. ("Delphi"), the General Contractor hired by the project owner East Boston Community Development Corporation ("EBCDC").  (Id. at ¶¶ 8-9; Docket #24-1 at ¶ 5).  While installing panels on the fourth floor of the project, Rodriguez fell from the construction site and suffered severe blunt force traumatic injuries resulting in his death. (Docket #24-1 at ¶¶ 10, 13-14).

On July 17, 2018, Robles, individually and as the Personal Representative of the Estate of Luis Orlando Rodriguez, filed the underlying action in Worcester Superior Court seeking to recover compensatory and punitive damages from Delphi, Turnkey, and EBCDC, asserting that their violations of their respective safety obligations and duties resulted in Rodriguez's death. (Docket #24-1).  In their answers, Delphi, Turnkey, and EBCDC raised affirmative defenses of contributory negligence by Rodriguez.  (Docket #24-3 at 8, 26-27, 43).  While NFI was not named as a direct defendant in the underlying action, on December 10, 2018, EBCDC and Delphi filed a third-party complaint against NFI.  (Docket #24-3 at 11-21, 36-39).

On the date of Rodriguez's fall, the Selective Defendants provided Turnkey $7 million of insurance coverage by way of a direct commercial general liability policy with a $1 million per occurrence limit and through NFI's primary and excess policies pursuant to an agreement for

---

[1] The Amended Complaint is available at Docket #13 pages 13-17.

defense and indemnification.[2]  (Am. Compl. at ¶ 10; Docket #13 at 20).  Turnkey was also covered by an additional $5 million policy with Hudson insurance.  (Am. Compl. at ¶ 11).  Consequently, Turnkey and NFI had $12 million in combined limits under their respective policies.

On December 17, 2019, Robles made an initial demand of $26 million to all parties.  (Am. Compl. at ¶ 17).  Robles provided additional materials in support of her demand on February 28, 2020.  (Id. at ¶ 18).  On March 20, 2020, Robles' counsel sent a chapter 93A demand letter (the "March 2020 demand letter") to SICA alleging that liability and damages were reasonably clear and that Selective had failed to effectuate a reasonable offer of settlement.  (Docket #13 at 19-21). The March 2020 demand letter conveyed a $12 million demand to release Robles' claims against Turnkey.  (Id. at 20).  SICSC and SICSE responded to the demand letter on April 17, 2020, extending a $4.5 million offer for a global resolution of all claims.  (Id. at 35-40).  They also confirmed their readiness to explore potential avenues to resolve Robles' claims against Turnkey while maintaining her right to pursue claims against Delphi and EBCDC.  (Id.).

In early November 2020, the Selective Defendants tendered their collective $7 million of coverage to Hudson, which then offered the combined limits of $12 million to Robles to resolve all claims against Turnkey.  (Am. Compl. at ¶ 22).  Robles accepted the offer and executed a written release of her claims against Turnkey on November 17, 2020.  (Id. at ¶ 23).  In September 2023, a month prior to the scheduled jury trial, Robles agreed to dismiss EBCDC for an unspecified amount.  (Docket #24-2 at 22).  Prior to closing arguments, Robles settled with Delphi.  (Id. at 27).

On June 24, 2024, Robles filed the instant action in Worcester County Superior Court.  The amended complaint alleges the Selective Defendants violated Massachusetts General Laws

---

[2] I note that the Amended Complaint is not a model of clarity with respect to each Defendant's individual role in this matter.  Although Robles acknowledges that Defendants are all separate entities, the Amended Complaint provides no information about the Selective Defendants' relationships vis-à-vis one another nor about any individual Defendant's particular actions.

chapters 93A and 176D by willfully and knowingly committing the following unfair and deceptive acts and practices in its handling of Robles' claims: failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies; failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies; failing to effectuate a prompt, fair, and equitable settlement of Robles' claim once liability had become reasonably clear; forcing Robles to file suit and ultimately try a case in which liability had become reasonably clear; and tendering an unreasonably inadequate settlement offer. (Am. Compl. at ¶¶ 27-28). Robles alleges that as a result of the Selective Defendants' conduct, she was deprived of the opportunity to engage in a timely settlement process and of insurance benefits, and experienced exacerbated losses and emotional distress. (Id. at ¶ 29). The Selective Defendants filed the motion for judgment on the pleadings on January 21, 2025. (Docket #22).

## II.    STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed – but early enough not to delay trial." Fed. R. Civ. P. 12(c). A court reviews motions for judgment on the pleadings under a standard that is essentially the same as that for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), except that "[a] Rule 12(c) motion, unlike a Rule 12(b)(6) motion, implicates the pleadings as a whole." Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54–55 (1st Cir. 2006). Facts contained in the pleadings are viewed in the light most favorable to the nonmovant, and all reasonable inferences are drawn in its favor. Zipperer v. Raytheon Co., 493 F.3d 50, 53 (1st Cir. 2007). In reviewing a motion under Rule 12(c), the court may consider "documents the authenticity of which are not disputed by the parties; documents central to the plaintiff's claim; and documents sufficiently

referred to in the complaint." <u>Curran v. Cousins</u>, 509 F.3d 36, 44 (1st Cir. 2007) (quoting <u>Watterson v. Page</u>, 987 F.2d 1, 3 (1st Cir. 1993)) (alterations omitted). "Judgment on the pleadings is proper 'only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment.'" <u>Zipperer</u>, 493 F.3d at 53 (quoting <u>Aponte-Torres</u>, 445 F.3d at 54).

III.    ANALYSIS

Massachusetts General Laws chapter 176D regulates the insurance business and prohibits the use of unfair or deceptive acts or practices in the business of insurance. Section 3(9) defines the following unfair claim settlement practices as "unfair methods of competition and unfair or deceptive acts or practices in the business of insurance": "[f]ailing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;" "[f]ailing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;" "[f]ailing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;" and "[c]ompelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds." Mass. Gen. Laws ch. 176D § 3(9)(b), (c), (f), (g). Chapter 176D was enacted to "encourage [] settlement" and prevent insurers from "forcing claimants into unnecessary litigation to obtain relief." <u>Clegg v. Butler</u>, 424 Mass. 413, 419 (1997). "A violation of Mass. Gen. Laws ch. 176D amounts to an unfair or deceptive act or practice for purposes of claims made under Mass. Gen. Laws ch. 93A." <u>Rawan v. Continental Cas. Co.</u>, 483 Mass. 654, 663 (2019). Therefore, a plaintiff who alleges an insurer violated Section 3(9) of chapter 176D may bring an action for damages pursuant to section 9 of chapter 93A. <u>Clegg</u>, 424 Mass. at 418. Insurers have a duty to effectuate timely settlement

offers to both their insureds and to third parties who have made claims against the insurer's policyholders. See id. at 418-19.

A.    Demand Letter

Chapter 93A requires a plaintiff to serve a written demand letter, "identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered," on prospective defendants at least thirty days prior to filing an action.  Mass. Gen. Laws ch. 93A, § 9(3).  "The statutory notice requirement is not merely a procedural nicety, but, rather, a prerequisite to suit" and "must be alleged in the plaintiff's complaint."  Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 19 (1st Cir. 2004) (internal quotation omitted).  A demand letter is not required "if the claim is asserted by way of counterclaim or cross-claim, or if the prospective respondent does not maintain a business or does not keep assets within the commonwealth."  Id.  However, where a demand letter is required, "[a] plaintiff's right to relief is foreclosed as a matter of law when the demand letter makes no reference to the particular act which he or she asserts in court constitutes a violation of Chapter 93A."  Wagner v. Fed. Home Loan Mortg. Corp., 494 F. Supp. 3d 80, 87 n.8 (D. Mass. 2020).

The Selective Defendants argue that most of the unfair and deceptive conduct alleged in the amended complaint was not included in the March 2020 demand letter and therefore should be dismissed.  (Docket #23 at 12-13).  To determine whether all of the deceptive and unfair conduct alleged in the amended complaint is properly before the Court, I must consider first whether a demand letter was required here and, if it was, whether Robles' letter reasonably described all of the alleged deceptive and unfair conduct.

In a footnote, Robles argues no demand letter was required because it is not clear that all the Selective Defendants maintain a place of business or keep assets in the commonwealth.

(Docket #25 at 3 n.2).  The Selective Defendants do not dispute these allegations in their reply brief.  However, to demonstrate the demand letter exception applies, a plaintiff "must allege facts [in the complaint] that [the defendant] does not maintain a place of business or keep assets in Massachusetts.  Bean v. Bank of N.Y. Mellon, No. 12-10930-JCB, 2012 WL 4103913, at *7 (D. Mass. Sept. 18, 2012); see Akar v. Fed. Nat. Mortg. Ass'n, 845 F. Supp. 2d 381, 405 (D. Mass. 2012) (declining to dismiss chapter 93A claim because "plaintiffs have alleged sufficient facts to show that they were not required to issue a demand letter before filing suit . . . under Chapter 93A.").  The amended complaint maintains SICA, SICSC, and SICSE "do[] business in the Commonwealth of Massachusetts" and have a principal place of business in New Jersey but it does not allege that SICA, SICSC, or SICSE do not keep assets in Massachusetts or do not maintain a place of business in the Commonwealth.  (Am. Compl. at ¶¶ 2-4).  Therefore, I find that the exception does not apply, and I must consider whether all conduct pled in the amended complaint is properly before the court.

The Selective Defendants argue that judgment should enter in favor of SICSC and SICSE because Robles did not identify any allegedly unfair settlement or other claims handling practices committed by either entity in the March 2020 demand letter which was addressed to SICA only. (Docket #23 at 3, 13).  Robles does not address this argument in its opposition to the motion.  (See Docket #25).  Courts in this district have held a party's failure to address in its opposition an argument raised in a dispositive motion "amounts to a waiver of any objection to it."  Agustsson v. E. Boston Sav. Bank, No. 17-cv-11776-GAO, 2018 WL 4696746, at *2 (D. Mass. Sept. 29, 2018); see Montany v. Univ. of New England, 858 F.3d 34, 41 (1st Cir. 2017) ("Defendants argue that [plaintiff's] failure to put forth any argument in her opposition to defendants' motion for summary judgment [on a particular claim] constitutes abandonment of such claim.  Having read

plaintiff's opposition, we agree.").  Therefore, I find that Robles has waived any argument that the March 2020 demand letter identified any allegedly unfair settlement or other claims handling practices by SICSC or SICSE and therefore her right to relief is foreclosed as to these two defendants and the claims against these defendants should be dismissed without prejudice.[3]  See Wagner, 494 F. Supp. 3d at 87 n.8; In re Mitchell, 476 B.R. 33, 60 (D. Mass. 2012) ("[W]hen a claim under Chapter 93A is brought without proper compliance with the demand letter requirement, the appropriate action is dismissal without prejudice in order to enable the plaintiff to refile a complaint if appropriate after compliance with the statutory prerequisites.").

The March 2020 demand letter alleges that SICA had failed to effectuate a prompt, fair and equitable settlement once liability became reasonably clear, in violation of section 3(9)(f) of chapter 176D; it does not allege any other unfair or deceptive act or practice.  (See Docket #13 at 19-21).  The amended complaint, on the other hand, alleges additional unfair or deceptive acts or practices relied upon to support chapter 93A relief.  In the amended complaint, Robles also alleges that SICA failed to acknowledge and act reasonably promptly on communications about Robles' claims, failed to adopt and implement reasonable standards for a prompt investigation of Robles' claims, forced Robles to file suit and pursue litigation where liability was reasonably clear, and tendered an unreasonably inadequate settlement offer in violation of sections 3(9)(b), (c), and (g) of chapter 176D.[4]  (See Am. Compl. at ¶ 27).  This conduct is not alleged in the March 2020

---

[3] I note the apparent incongruity of the Selective Defendants' argument that the March 20 demand letter was not addressed to SICSC or SICSE with the fact that it was SICSC and SICSE who responded to that letter.  Robles, however, is represented by counsel who was free to raise this point but instead chose not to respond to the Selective Defendants' argument.

[4] Section 3(9) does not include a subsection referring to compelling third parties to institute litigation when liability is reasonably clear, and tendering "unreasonably inadequate" settlement offers.  I construe these allegations, consistent with the statute, to refer to section 3(9)(f) ("Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear") and (g) ("Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought

demand letter and therefore these allegations are not properly before this court.[5]  Therefore, I recommend that the alleged violations of section 3(9)(b), (c), and (g) be dismissed without prejudice.  I now turn to whether Robles may proceed on her claim for alleged violations of section 3(9)(f).

B.    Unfair Settlement Practices Claim

It is an unfair settlement practice, and an unfair or deceptive act or practice under chapter 93A, if an insurance company fails "to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear."  Mass. Gen. Laws ch. 176D, § 3(9)(f).  Section 3(9)(f) and 93A together require an insurer "promptly to put a fair and reasonable offer on the table when liability and damages become clear, either within the thirty-day period set forth in Mass. Gen. Laws ch. 93A, § 9(3), or as soon thereafter as liability and damages make themselves apparent."  Hopkins v. Liberty Mut. Ins. Co., 434 Mass. 556, 566 (2001).  To determine the adequacy of an insurer's response to a demand for relief under 93A, the court asks "whether, in the circumstances, and in the light of the complainant's demands, the offer is reasonable.'"  Clegg, 424 Mass. at 420 (quoting Calimlim v. Foreign Car Ctr., Inc., 392 Mass. 228, 234 (1984)).  "'[T]he reasonableness of an insurer's response is to be considered in the light of the situation as a whole,' bearing in mind that the negotiation of a settlement is 'a legitimate bargaining process.'"  Caira v.

---

by such insureds").  To the extent Robles intends to allege SICA's conduct violates section 3(9)(g), such claims should be dismissed for the reasons discussed in this section.

[5] In her opposition to the motion, Robles argues that, although the March 2020 demand letter only specifically references SICA's alleged violation of section 3(9)(f), subsequent correspondence sent to the Select Defendants' counsel establishes that Robles had put the Select Defendants on notice of other conduct alleged in the amended complaint.  (Docket #25 at 5).  However, the court finds that Robles is not entitled to end-run the statute's notice requirement on a theory that a subsequent communication suffices as "[i]t is neither constructive nor fair to allow proceedings to be launched by a demand which hides its identity."  Cassano v. Gogos, 20 Mass. App. Ct. 348, 351 (Mass. App. Ct. 1985).  As the statute mandates, the "heavy artillery of 93A, i.e. multiple damages and the imposition of counsel fees," Johnson v. Johnson, 23 F.4th 136, 144 (1st Cir. 2022), should only apply where the defendant has been put on express notice of the specific conduct the plaintiff alleges violates chapter 176D.  See Clegg, 424 Mass. at 423 ("Chapter 93A requires claimants to set out specifically any activities in their demand letter as to which they seek relief.").

9

Zurich Am. Ins. Co., 91 Mass. App. Ct. 374, 381 (2017) (quoting Bobick v. United States Fid. & Guar. Co., 439 Mass. 652, 661-662 (2003)) (alteration in original).

The Selective Defendants provided Turnkey $7 million of insurance coverage by way of a direct commercial general liability policy and through NFI's primary and excess policies pursuant to an agreement for defense and indemnification. (Am. Compl. at ¶ 10). Turnkey was also covered by an additional $5 million policy with Hudson insurance. (Id. at ¶ 11). In her March 2020 demand letter, Robles stated that she was willing to resolve her claims against Turnkey for the available Selective and Hudson policy limits of $12 million. (Docket #13 at 20). The Selective Defendants argue that Robles' refusal to release any of her claims in the underlying action for an amount within the Selective Defendants' control entitles them to entry of judgment in their favor on Robles' 93A claim. (Docket #23 at 14-16). The court finds this argument unavailing.

In Lazaris v. Metropolitan Property & Casualty Insurance Co., the Massachusetts Supreme Judicial Court ("SJC") addressed the obligation of insurers under section 3(9)(f) of chapter 176D in situations where liability is reasonably clear and the claimant's damages unquestionably exceed the coverage set forth in the insured's policy. Lazaris v. Metro. Prop. & Cas. Ins. Co., 428 Mass. 502, 504 (1998). Noting that section 3(9)(f) speaks of effectuating "settlements of claims" and not the payment of claims, the SJC concluded that "a claim is settled within the meaning of section 3(9)(f) only when it is fully disposed of, which means that the claimant has released all claims against the insured." Id. Consequently, when "a claimant with a claim in excess of the policy limit will not settle all claims against the insured that are covered by the policy, the company does not violate clause (f) by refusing to pay the policy limit." Id. at 505. The SJC reasoned that section 3(9)(f) works well for claims that fall below the insured's policy limit. Id. "Where, however, liability is reasonably clear and in an amount substantially above the policy limit, the insurance

company cannot effectuate a settlement that would be fair and equitable because payment of the policy limit in exchange for a release would not be fair and equitable, as it would not fully compensate the claimant for the damages sustained." Id. at 505-06.  In such a case, "the best the insurance company can do in effectuating settlement is to offer the policy limit in exchange for a release." Id. at 506.  In so doing, the insurance company fulfills its duty to the insured while at the same time protecting the insurance company from liability to the claimant. Id. at 505-06.  The claimant then has the choice to either accept the offer or proceed to trial. Id. at 506.

In Caira v. Zurich American Insurance Co., the Massachusetts Appeals Court, citing to Lazaris, held that an insurance company did not violate section 3(9)(f) when it conditioned payment of its available primary insurance policy limit on a release of all claims against its insureds, notwithstanding the availability of excess insurance. Caira v. Zurich Am. Ins. Co., 91 Mass. App. Ct. 374, 374-75 (2017).  The Appeals Court explained that "[a]n insurer need not forsake its demand for a release in order to enable a claimant to collect additional damages, either from the insureds themselves for from an excess insurance policy." Id. at 383.

Both Lazaris and Caira emphasize an insurer's need to balance its duty "to respond promptly to demands by a claimant to effectuate prompt settlement" with its "obligation to protect the interests of its insured, and to guard against bad faith claims." Caira, 91 Mass. App. Ct. at 383 (quoting Gore v. Arbella Mut. Ins. Co., 77 Mass. App. Ct. 518, 525-26 (2010)); see Lazaris, 428 Mass. at 506.  In both cases, the court found that an insurer appropriately balances these competing duties by offering the policy limit in exchange for a release of its insured. Lazaris, 428 Mass. at 505-06; Caira, 91 Mass. App. Ct. at 374-75.  Here, the Selective Defendants responded to Robles' March 2020 demand letter with a settlement offer of $4.5 million for a full and complete release of all the defendants in the underlying action; however, they did not make any settlement offer for

a full and complete release of Turnkey only.  (Docket #13 at 39).  In order to fulfill their duties under section 3(9)(f), the Selective Defendants were required to offer the policy limit in exchange for a release of Turnkey regardless of the likelihood of Robles' acceptance of such a proposed settlement.  The Selective Defendants failed to do so and cannot now argue that they were excused from this requirement because Robles was unlikely to accept this settlement offer.[6]

Although the Selective Defendants failed to offer the policy limit in exchange for a release of Turnkey, such action would only violate section 3(9)(f) if liability and damages are reasonably clear.  Mass. Gen. Laws ch. 176D, § 3(9)(f).  The Selective Defendants argue that Robles' claim fails as a matter of law because of good faith disputes over the parties' proportionate degrees of alleged fault for Rodriguez's fall and Robles' asserted entitlement to recover a multi-million dollar award of compensatory and punitive damages on her claims.  (Docket #23 at 16-17).  The Selective Defendants only address whether liability for the $12 million demand was reasonably clear; they do not address whether liability for the $1 million covered by Turnkey's primary policy was reasonably clear.  Hence, this court finds that SICA has not shown that it is entitled to judgment in its favor.  For this same reason, the court cannot find that SICA is entitled to judgment on Robles' claim for a willing and knowing violation of Chapter 93A.

IV.    CONCLUSION

For the foregoing reasons, I RECOMMEND that the motion for judgment on the pleadings (Docket #22) be ALLOWED IN PART and DENIED IN PART.  I RECOMMEND that the claims against SICSC and SICSE be DISMISSED WITHOUT PREJUDICE.  I further RECOMMEND

---

[6] The Selective Defendants argue that Robles' claim fails as a matter of law because it rests upon the flawed assertion that Selective had a statutory obligation to convey any portion of the $6 million NFI policy limits to obtain a release against Turnkey. (Docket #23 at 16).  The Selective Defendants assert that they fully discharged any obligations they arguably owed to Robles by conveying an offer for $4.5 million to release all the underlying defendants which they assert included the full primary policy occurrence limit.  (Id.).  The court need not address this argument.  The Selective Defendants never made any timely offer of the occurrence limit of Turnkey's primary policy in exchange for a full and complete release of Turnkey only.

that the claims against SICA for violations of Mass. Gen. Laws ch. 176D, § 3(9)(b), (c), and (g) be DISMISSED WITHOUT PREJUDICE. I RECOMMEND that the motion be otherwise DENIED.[7]


/S/ David H. Hennessy
David H. Hennessy
UNITED STATES MAGISTRATE JUDGE

---

[7] The parties are hereby advised that, under the provisions of Fed. R. Civ. P. 72, any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objections are made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Emiliano Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140 (1985).